**EDWARD F. WESTFIELD, P.C.**
EDWARD F. WESTFIELD, ESQ . (NYS BAR NO. 1718287)
6218 RIVERDALE AVENUE
RIVERDALE, NY 10471
T: (718) 601-1100
F: (212) 601-1200
E: efw@efwpc.com


-AND-

**Hyderally & Associates, P.C.**
TY HYDERALLY, ESQ. (NJSBA 85013)
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
E: tyh@employmentlit.com

Attorneys for Plaintiff: Edwin Toribio

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDWIN TORIBIO,<br><br>PLAINTIFF,<br><br>VS.<br><br>1100 PARK AVENUE COOPERATIVE CORPORATION, WALLACK MANAGEMENT COMPANY, INC., WILLIAM MOONEY, JOHN DOES 1-10, AND XYZ CORP. 1-10,<br><br>DEFENDANTS. | CIVIL ACTION No:<br><br><br>**COMPLAINT<br>AND JURY DEMAND** |

Plaintiff, Edwin Toribio, ("Toribio" or "Plaintiff"), Hispanic and Dominican, residing at 3034 81st Street, Apt. #3, East Elmhurst, New York 11370, by way of this Complaint against 1100 Park Avenue Cooperative Corporation ("Park Avenue"), Wallack Management Company, Inc.

("Wallack Management"), William Mooney ("Mooney"), John Does 1-10, and XYZ Corp. 1-10, (hereinafter collectively "Defendants"), hereby says:

## I.   Nature of Action, Jurisdiction, and Venue

1.     This is an action seeking equitable and legal relief for:  (1) a violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2(a) ("Title VII") (race discrimination); (2) a violation of Title VII (national origin discrimination); (3) a violation of Title VII (retaliation); (4)  a violation of the Americans with Disabilities Act of 1990 ("ADA"), codified at 42 U.S.C. § 12101 *et seq.* ("ADA") (disability discrimination);  (5) a violation of the ADA (retaliation); (6) a violation of the New York State and New York City Human Rights Law and Civil Rights Law, N.Y. Exec. Law § 290 *et seq.* and N.Y.C. Admin. Code § 8-101 *et seq.* (collectively, "NYHRL") (disability discrimination); (7) a violation of the NYHRL (race discrimination); (8) a violation of the NYHRL (national origin discrimination); and (9) a violation of NYHRL (retaliation).

2.     Jurisdiction is asserted under 28 U.S.C. § 1331 in so far as Plaintiff's Complaint asserts claims under 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 12101 *et seq.* Supplemental jurisdiction is asserted over Plaintiff's state law claims under 28 U.S.C. § 1367.

3.     Venue is appropriate in that the illegal and improper acts which are the basis for the within asserted causes of action occurred in the Southern District of New York, and the Defendants in this matter are the entities or organizations in the State of New York and acting in their individual and official capacities under color of New York law.

4.     In addition, the union in which some of the corporate Defendant's employees participated, Service Employees International Union, Local 32BJ (the "Union"), has denied that Plaintiff was ever a member of the Union.

5.     Plaintiff does not believe that he is a member and denies that he is a member of the Union.

6.     Despite statements to the contrary by counsel for Defendants, Defendants has produced no proof that Plaintiff is a member of the Union.

7.     Plaintiff did not pay any Union dues.

8.     Plaintiff was not provided with any Union membership card.

2

9.    When Plaintiff contacted the Union to grieve his termination, the Union confirmed that Plaintiff is not a member of the Union.

10.   Thus, pursuing this matter in litigation appears to be the appropriate process, despite unsupported claims made by the corporate Defendant that Plaintiff was a member of the Union during the relevant time period. This issue is further addressed in the Certification of no other actions or parties contained herein.

11.   On October 16, 2019, Toribio timely filed a signed and verified Charge of Discrimination ("COD") with the Equal Employment Opportunity Commission (EEOC), and a corrected COD on May 13, 2020. (Exhibit "1").

12.   Toribio's COD alleged claims of race discrimination; national origin discrimination; disability discrimination, and retaliation under Title VII and the ADA.

13.   Toribio's COD raised the same and/or reasonably related issues before the EEOC that he raises with the Court.

14.   On June 5, 2020, the EEOC issued a Right to Sue Notice to Plaintiff. (Exhibit "2").

15.   Thus, Toribio has properly exhausted his administrative remedies before the EEOC and can now pursue to this matter before this Court.


## II. Parties

16.   On information and belief, Park Avenue is a cooperative corporation organized in the State of New York, with a registered address of 1100 Park Avenue, New York, New York 10128.

17.   During the relevant time period, Park Avenue was the owner of the residential apartment building located at 1100 Park Avenue, New York, New York ("Building").

18.   Wallack Management is a real estate management company organized in the State of New York, with its principal place of business located at 441 Lexington Avenue, 4th Floor, New York, New York 10017.

19.   On information and belief, Park Avenue's corporate headquarters are c/o Wallack Management, 441 Lexington Avenue, New York, NY 10017.

20.   During the relevant time period, Wallack Management managed the Building and the employees working in the Building.

3

21. Plaintiff was an employee of the corporate Defendants and performed job-related duties in the State and City of New York.

22. During the relevant time period, Toribio worked for Defendants primarily as a Doorman at the Building, in addition to performing concierge and runner duties as needed.

23. During the relevant time period, Mooney, Caucasian and Irish, was the superintendent and building manager of the Building.

24. Additionally, Mooney was a senior management-level employee who controlled Plaintiff's workplace and supervised Plaintiff and (1) aided the employer in performing a wrongful act that caused an injury; (2) was generally aware of his role as part of an illegal or tortious activity at the time he provided assistance; and (3) knowingly and substantially assisted the employer in the principal violation of the statutes referenced herein.

25. During the relevant time period, JOHN DOES 1-10 are currently unknown employees who were either senior management-level employees who controlled Plaintiff's workplace, and supervised Plaintiff and aided and/or abetted in the commission of conduct complained of herein and/or who either acted within the scope of their employment at the workplace during working hours, or, to the extent they went beyond the scope of their employment, Defendants ratified, embraced and added to their conduct. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual employees by name.

26. During the relevant time period, XYZ Corp. 1-10 are unknown affiliated corporations or entities or other corporations who have liability for the claims set forth herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual entities by name.

27. Thus, all Defendants are subject to suit under the statutes alleged above.

28. At all times referred to in this Complaint, employees of the corporate Defendants, who are referred to herein, were acting within the scope of their employment at the workplace during working hours, or, to the extent that they were not so acting, the corporate Defendants ratified, embraced and added to their conduct.

## II. Factual Allegations

29. On or about October 31, 2015, Defendants hired Toribio to work as the nighttime doorman at the Building, Monday through Thursday, from 11:30pm to 7:30am, at a regular hourly rate of approximately $19.00.

30. Toribio was a dedicated and hard worker, regularly working an average of 20+ hours of overtime per week.

31. Toribio's responsibilities as the night Building Doorman included, monitoring the front desk, greeting residents, answering the phone, administrative tasks, taking in food deliveries, fielding various resident inquiries, light cleaning, and maintaining the Building's visitor and activity logs.

32. Toribio reported to Mooney, who reported to Burt Wallack ("Wallack"), Caucasian and Irish, an officer, owner and director of Wallack Management.

33. Throughout his employment Toribio performed his duties in an exemplary manner, and received several raises.

34. Toribio was also highly regarded by Building residents, who showed their appreciation of his dedicated service by giving him generous holiday tips which averaged between $10,000 and $13,000 per year.

35. Toribio was an outstanding employee, despite that he was forced to endure a workplace permeated with bigotry and racism, creating a severe and pervasive hostile work environment which altered his working conditions.

36. Toribio also suffered disability discrimination and retaliation for seeking reasonable accommodations due to his disability.

37. Mooney constantly made racist remarks directed towards Toribio and other Hispanic employees in the workplace.

38. For example, Mooney frequently referred to Puerto Rican employees as "lazy fucking Puerto Ricans" and, to other Hispanic employees, as "fucking spics" and "fucking Mexicans."

39. Mooney would also often call Toribio "dumb in a can for Dominican" and then laugh at his bigoted joke.

40. Toribio was embarrassed and humiliated by Mooney's blatantly discriminatory comments and pleaded with Mooney to stop speaking to him and other Hispanics in a discriminatory and derogatory manner.

41. However, Mooney ignored Toribio's request, took no corrective measures, and continued to engage in racist actions in the workplace.

42. For example, Mooney frequently harassed Toribio and other Hispanic employees and minority building workers by repeatedly asking them, "Did you swim across the river too?"

43. Mooney also berated Toribio if he greeted any Hispanic individuals who were working in the Building in Spanish, angrily demanding that Toribio "quit talking to the fucking Mexicans" or words to the effect of, "You need to speak in English so I know what the fuck you are saying and what these Mexicans are saying."

44. Due to Mooney's openly discriminatory actions, other non-Hispanic employees were emboldened to make similarly racist comments towards Toribio, as well as other Hispanic employees.

45. For example, employee Michael King ("King"), Caucasian and Irish, frequently made offensive jokes about Hispanics to Toribio and other Hispanic employees, such as, "I could see how you guys are pretty fast, running from "Migra," (a slang term for immigration law enforcement agencies); and "Speak so I can understand you - you sound like a fucking Mexican."

46. King would also make racist remarks about what Hispanics ate, such as, "Where are you going, to the Taco stand?"; "All Hispanics are alike; all Hispanics eat Mexican food."

47. Similarly, employee Eddie Coogan, Caucasian and Irish, referring to Hispanic contractors in the Building, would remark to Toribio and other Hispanic employees, "They don't understand – you know how you guys are."

48. Such hostile work environment became even more unbearable when Mooney tried to force Toribio to participate in Mooney's discriminatory actions.

49. In or about December 2017, Mooney stated to Toribio that he wanted to terminate Victor

Diaz ("Diaz"), who is Hispanic and Puerto Rican, because he was "a lazy fucking Puerto Rican."

50.     Toribio was shocked by Mooney's unabashed racism.

51.     To add insult to injury, Mooney then pressured Toribio to sign a statement that Diaz was not performing his job, stating to Toribio, "You know that Victor is a lazy fucking Puerto Rican."

52.     Toribio refused to participate in Mooney's racist conduct.

53.     Mooney then became enraged and stated "you are another fucking spic! I should have known!"

54.     Such actions are consistent with a pattern and practice of discrimination against Hispanic employees working for Defendants.

55.     Consequently, a number of Hispanic employees have filed informal and formal complaints against Defendants, and, on information and belief, at least one Hispanic employee felt compelled to resign due to Defendants' tolerance of unrelenting racism against Hispanics in the workplace.

56.     For example, on October 13, 2015, Hispanic employee, Erik Goenaga, filed a complaint in Federal Court against Park Avenue, Wallack Management, and Mooney, for unlawful discrimination, based upon Mooney's disparate treatment and creation of a severe and pervasive hostile work environment due to Mooney regularly making derogatory remarks based upon disability, race, color, and national origin.

57.     Mooney's disparate treatment of Hispanic employees continued throughout Toribio's employment, with Irish employees regularly receiving preferential treatment.

58.     For example, Mooney regularly permitted Irish employees King, Richie McNamara ("McNamara") and Kevin Greene ("Greene"), to exceed the 10 days of allotted annual sick time without issue, whereas Mooney refused the requests of Toribio and other Hispanic employees to take more than 10 sick days per year.

59.     Similarly, Greene was granted light duty on many occasions due to an issue with his back, and McNamara was also accommodated for his medical issues with a medical leave of approximately one year and then returning to work on light duty due to a medical issue.

60.   In contrast, when Toribio suffered a work-related injury and requested light duty, Defendants refused to permit him to return to work on light duty.

61.   Defendants failed to engage in any interactive process or discussion with Toribio to discuss what reasonable accommodations could be made due to his medical condition.

62.   Instead, Defendants retaliated against Toribio for requesting accommodations for his disability.

63.   On January 5, 2018, shortly after arriving for his 11:30 pm - 7:30 am shift, Mooney directed Toribio to put salt down on the sidewalk in front of the Building.

64.   While Toribio was performing his work-related duties, he slipped and slammed on the black ice, causing significant and traumatic physical injuries to his body and his lower back.

65.   Although Toribio returned to work, the pain grew increasingly more debilitating.

66.   Thus, Toribio sent a text to Mooney, reporting the injury, and advising that he was unable to complete his shift. (Exhibit "3").

67.   The following morning, Toribio awoke with excruciating pain in his lower back.

68.   Pursuant to company protocols, prior to the start of his shift, Toribio notified Mooney that because Toribio was in severe back pain he would not be able to report to work that day. (Exhibit "3").

69.   Over the weekend, the pain continued to persist and worsen to an excruciating degree, such that Toribio intended to call out of work prior to the start of his night shift on Monday, January 8, 2018.

70.   However, Mooney first sent a text message to Toribio stating "You coming in today. Or are you remaining on the malingering list," followed by a laughing emoji. (Exhibit "4").

71.   When Toribio further described the severity of his back pain, Mooney further joked "all those years of humping with to [sic] much weight comes back to haunt you my friend." (Exhibit "4").

72.   Toribio was distraught by the levity with which Mooney regarded his work-related injury, but did his best to appease Mooney with an agreeable response. (Exhibit "4").

73.   Toribio was not scheduled to work on January 9 or 10, 2018.

74. Toribio's condition did not improve, and, thus, on January 9, 2018, Toribio advised Mooney that he would be making an appointment to consult with his doctor in the next couple of days. (Exhibit "5").

75. Mooney continued to make light of Toribio's injury, joking that he hoped that Toribio was enjoying his vacation. (Exhibit "5").

76. Mooney also stated that he heard that Toribio was planning on leaving his employment. (Exhibit "6").

77. Toribio was shocked by such a suggestion and immediately responded that he liked his job and had no intention of leaving his employment.

78. On January 11, 2018, Toribio consulted with his primary care physician, Antohi Petronela, M.D. ("Dr. Petronela") for his lower back pain caused by his work-related injury.

79. Dr. Petronela diagnosed Toribio as suffering from sciatica, prescribed medication, and put Toribio out of work until January 15, 2018. (Exhibit "6").

80. Toribio provided Dr. Petronela's medical note to Defendants putting Toribio out of work until January 15, 2018. (Exhibit "6").

81. Toribio returned to work for his shift starting at 11:00 pm on January 14, 2018; however, due to the severe pain that he was in and the effect of the medication that Dr. Petronela had prescribed, he was unable to work.

82. Toribio then utilized approximately 10 days of his accrued vacation and personal time to rest, in the hope that his injuries would resolve.

83. However, rather than improve, his condition worsened.

84. Thus, on January 22, 2018, Toribio again consulted with Dr. Petronela. (Exhibit "7").

85. Dr. Petronela then advised Toribio that he could not continue to treat Toribio's injury, as it was work-related, and that Toribio should request from his employer information regarding their workers compensation coverage.

86. Thus, Toribio requested from Wallack the contact information for the company's workers compensation carrier to continue treatment of his work-related injury.

87. On or about January 25, 2018, Toribio began treating with workers compensation authorized physician Ajendra Sohal, M.D., M.S., FAAPMR ("Dr. Sohal"), for Toribio's work-related lower back injury.

88. Toribio underwent therapeutic treatment with Dr. Sohal on a regular basis from January 25, 2018 through the fall of 2018.

89. During this time period Toribio kept Defendants updated on the status of his medical condition, through phone calls, emails and text messages.

90. Shortly after Toribio was put out of work due to his work-related injury, Mooney increasingly pressured Toribio to return to work or risk termination.

91. On March 15, 2018, Mooney sent a text message to Toribio stating that "your [sic] out about 3 months now. At this point we need u [sic] back or we will have to move on." (Exhibit "8).

92. At the same time that Mooney stated that continued medical leave for Toribio was an issue, he acknowledged that King was out on a medical leave for an undetermined length of time. (Exhibit "8").

93. Toribio was shocked by Mooney's blatant discrimination and retaliation, and asked whether he was being given an ultimatum. (Exhibit "8").

94. Mooney then denied the same, but continued to demand that Toribio return to work "ASAP." (Exhibit "8").

95. On March 26, 2018, Toribio advised Mooney that he was awaiting test results and further direction from his physician for his return to work. (Exhibit "9").

96. On April 4, 2018, Mooney continued to pressure Toribio to return to work, sending him a text message which stated "Waiting on your return, come April 10th, you will be out from work for 3 months & 10 days. If you are coming back u will need a letter saying u are 100% fit to work. What's it looking like?" (Exhibit "10").

97. Toribio then called Mooney and asked to return to work on light duty, such as performing concierge duties, until he was able to work without any restrictions.

98. Toribio could have easily been permitted to return to work, despite with his restrictions, with a requirement of only modest accommodations.

99. However, Mooney flatly refused Toribio's request for a reasonable accommodation of working light duty, despite that Mooney had accommodated other non-Hispanic, Irish employees with light duty, such as Greene and McNamara.

100. Such disparate treatment caused Toribio to become concerned that his job was in jeopardy because of his disabling work-related injury and requested accommodations.

101. In fact, Defendants never engaged in any interactive process or discussion with Toribio to discuss what reasonable accommodations could be made due to his disability/medical condition.

102. In August 2018, Dr. Sohal referred Toribio to surgeon Sanjeev Suratwala, M.D. ("Dr. Suratwala"), to evaluate Toribio for lumbar surgery, as Toribio's condition had not sufficiently improved with nonsurgical interventions.

103. On August 10, 2018, Toribio consulted with Dr. Suratwala, who recommended that Toribio undergo lumbar surgery.

104. Toribio's surgery was subsequently delayed until April 2019, due to medical complications and approval of coverage by Defendants' workers compensation carrier.

105. Throughout this time period, Toribio continued to regularly communicate with Mooney about his medical condition and repeatedly asked if he could return to work on light duty.

106. However, Defendants continued to refuse Toribio's request for an accommodation of working light duty and engage in an interactive process to discuss what reasonable accommodations could be made due to his disability/medical condition.

107. On February 13, 2019, Mooney informed Toribio that he could only return to work if he provided a doctor's note stating that he could lift at least 50 pounds. (Exhibit "11").

108. There was no basis for such a requirement, as Toribio's position did not involve much lifting, and when it occasionally did, it was not more than 20 pounds.

109. Thus, on March 21, 2019, Toribio advised Mooney that his physician had cleared him to return to work on limited duty and again requested that he be permitted to return on light duty. (Exhibit "12").

110. Mooney responded "No way can you come back to work with restrictions. You have to have a letter saying you are 100 per cent fit to do your job as normal." (Exhibit "12").

111. On April 4, 2019, Toribio spoke with Mooney and let him know that he was not going to be undergoing surgery, and wanted to return to work.

112. Mooney responded, "Get me something saying you can work."

113. On April 5, 2019, Toribio met with Mooney and provided him with his doctor's note clearing him to return to work full-time, with restrictions on lifting over 20 pounds and prolonged sitting and standing, or repetitive bending, kneeling, squatting or crawling. (Exhibit "13").

114. Such restrictions could easily have been accommodated.

115. Toribio's position as Building Doorman, allowed for him to frequently switch from standing to sitting positions. Further, the position required very little lifting, and, when he did, it was less than 20 pounds. Additionally, the position did not require repetitive bending, kneeling, squatting or crawling.

116. Despite this, Mooney maintained that Toribio had to be cleared to return to work without *any* restrictions, or he could not return to work.

117. Toribio noted that his restrictions would not interfere with his ability to successfully perform all of his essential job functions.

118. Mooney said that he would discuss the situation with Wallack and get back to him.

119. However, Defendants never accommodated Toribio with light duty or engaged in any interactive process or discussion with Toribio to discuss what reasonable accommodations could be made due to his disability/medical condition.

120. Instead, Defendants engaged in the ultimate retaliation when they terminated Toribio on April 16, 2019.

121. On April 19, 2019, Toribio received a termination letter dated April 16, 2019 which falsely asserted that Toribio intended to be out of work for an additional 12-16 months, despite that Toribio had advised Mooney he was not going to have the surgery and the fact that Toribio had asked to return to work with minimal restrictions which did not interfere with his ability to successfully perform his job. (Exhibit "14").

122. Toribio called Mooney and went through the falsehoods in the letter. Despite that, Mooney responded that they had made a decision and required Toribio to be 100% to return to work.

123. Toribio protested that McNamara and Greene returned to work on light duty.

124. Mooney replied, "Stop being a bitch; stop crying; we made up our mind."

125. Toribio had never been verbally informed of any performance issues, before he was terminated.

126. Toribio had never been given any written warnings of any performance issues, before he was terminated.

127. Toribio had never been given any counseling, before he was terminated.

128. Toribio had never been disciplined, before he was terminated.

129. Toribio had never been suspended, before he was terminated.

130. Toribio had never been demoted, before he was terminated.

131. Defendants never put Toribio on a performance improvement plan regarding his performance, before they terminated Toribio.

132. Defendants never provided any coaching to Toribio about any performance issues, before they terminated him.

133. Defendants terminated Toribio because of his race, national origin and disability, and in retaliation for taking medical leave and requesting reasonable accommodations.

134. Toribio was replaced by a non-disabled, non-Hispanic individual and/or Toribio's duties were assumed by non-disabled, non-Hispanic employees.

135. Defendants' actions were so intolerable that they resulted in Toribio suffering significant emotional distress injuries and/or the physical manifestation of an emotional injury.

136. Defendants' termination of Toribio sent him into an emotional tailspin, causing him to suffer extreme anxiety, depression, loss of sleep, has caused his marriage to deteriorate, negatively impacted upon his relationship with his children, interfered with his normal sleeping and eating patterns, and other emotional and financial stressors.

137. At the time of his termination on April 16, 2019, plaintiff was earning a regular hourly rate of $23.81, which with overtime equated to an annual salary of approximately $85,245.

138. Further, Toribio received benefits of employment, such as medical, dental and vision benefits, 10 paid sick days, 2 paid personal days, and 2 weeks paid vacation, and received time and half for working on company holidays.

139. These benefits of employment make up plaintiff's claim for damages.

## Count I
### (Title VII, 1964 Civil Rights Act –Race Discrimination)

140. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

141. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), provides that it shall be an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race or to limit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee, because of such individual's race.

142. The foregoing facts and circumstances demonstrate that defendant has violated Title VII of the Civil Rights Act of 1964, by treating plaintiff in a disparate fashion and discriminating against plaintiff based upon plaintiff's race.

143. As a direct and proximate result of the actions of defendant, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy plaintiff's life. Moreover, plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

144. Furthermore, plaintiff has been required to retain an attorney to assist Plaintiff in asserting plaintiff's claims and protecting plaintiff's rights.

## Count II
### (Title VII, 1964 Civil Rights Act –National Origin Discrimination)

145. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

146. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), provides that it shall be an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's national origin or to limit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee, because of such individual's national origin.

147. The foregoing facts and circumstances demonstrate that defendant has violated Title VII of the Civil Rights Act of 1964, by treating plaintiff in a disparate fashion and discriminating against plaintiff based upon plaintiff's national origin.

148. As a direct and proximate result of the actions of defendant, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury.  Furthermore, plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy plaintiff's life.  Moreover, plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

149. Furthermore, plaintiff has been required to retain an attorney to assist Plaintiff in asserting plaintiff's claims and protecting plaintiff's rights.

## Count III
### (Title VII, 1964 Civil Rights Act –Retaliation)

150. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

151. The foregoing facts and circumstances demonstrate that defendant has violated Title VII of the Civil Rights Act of 1964, by retaliating against plaintiff for complaining of disparate treatment and impact based upon race and national origin.

152. As a direct and proximate result of the actions of Defendant, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional

15

distress injuries, the physical manifestation of emotional distress injuries and/or physical injury.  Furthermore, plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy plaintiff's life.  Moreover, plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

153.  Furthermore, plaintiff has been required to retain an attorney to assist Plaintiff in asserting plaintiff's claims and protecting plaintiff's rights.

## Count IV

### (The Americans with Disabilities Act of 1990 ("ADA")
United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26)
codified at 42U.S.C. § 12101 *et seq.*)
(Disability Discrimination)

154.  Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

155.  The foregoing facts and circumstances demonstrate that Defendants have violated the ADA, by discriminating against Plaintiff because of his disability and/or failing to accommodate Plaintiff.

156.  As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury.  Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

157.  Furthermore, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**Count V**
**(ADA, United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26)**
**codified at 42U.S.C. § 12101 *et seq.*)**
**(Retaliation)**

158. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

159. The foregoing facts and circumstances demonstrate that Defendants have violated the ADA, by engaging in acts of reprisal and/or retaliation because Plaintiff asserted his rights under the ADA and/or complained of disability discrimination/harassment and/or retaliation.

160. As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

161. Furthermore, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**Count VI**
**(New York State and New York City Human Rights Law and Civil Rights Law)**
**(Disability Discrimination)**

162. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

163. The foregoing facts and circumstances demonstrate that Defendants have violated the New York State and New York City Human Rights Law and Civil Rights Law by discriminating and harassing Plaintiff due to his medical condition/disability/handicap.

164. As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical

injury.  Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.  Plaintiff's damages have been experienced in the past, and they will continue into the future.

165.    Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

<u>**Count VII**</u>
**(New York State and New York City Human Rights Law and Civil Rights Law)**
**(Race Discrimination)**

166.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

167.    The foregoing facts and circumstances demonstrate that Defendants have violated the New York State and New York City Human Rights Law and Civil Rights Law by discriminating and harassing Plaintiff due to his race.

168.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury.  Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.  Plaintiff's damages have been experienced in the past, and they will continue into the future.

169.    Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

<u>**Count VIII**</u>

**(New York State and New York City Human Rights Law and Civil Rights Law)**
**(National Origin Discrimination)**

170.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

171. The foregoing facts and circumstances demonstrate that Defendants have violated the New York State and New York City Human Rights Law and Civil Rights Law by retaliating against Plaintiff for taking medical leave and/or requesting accommodation, for suffering from a medical condition, and/or for complaining of discriminatory and/or retaliatory and/or harassing treatment.

172. As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

173. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## **Count IX**

### **(New York State and New York City Human Rights Law and Civil Rights Law)**
### **(Retaliation)**

174. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

175. The foregoing facts and circumstances demonstrate that Defendants have violated the New York State and New York City Human Rights Law and Civil Rights Law by retaliating against Plaintiff for taking medical leave and/or requesting accommodation, for suffering from a medical condition, and/or for complaining of discriminatory and/or retaliatory and/or harassing treatment.

176. As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living,

and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

177.  Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**WHEREFORE**, as to each and every count, Plaintiff demands judgment on each and all of these Counts against defendants, jointly and severally, as follows:

A.  Compensatory damages;

B.  Equitable damages;

C.  Damages for lost wages and benefits, back pay, front pay and reinstatement;

D.  Damages for humiliation, mental and emotional distress;

E.  Statutory damages, if applicable;

F.  Punitive damages and or liquidated damages where permitted by law;

G.  Attorneys' fees and costs of suit;

H.  Lawful interest - including pre-judgment interest on lost wages;

I.  Lawful interest - including pre-judgment interest on any wages not paid in a timely manner

J.  Such other, further and different relief as the Court deems fitting, just and proper.

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the defendants, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## DESIGNATION OF TRIAL COUNSEL

TY HYDERALLY is hereby designated as trial counsel on behalf of plaintiff.

## CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that there are no other parties known to me at this time who should be joined as parties to this action.  However, solely because counsel for the corporate Defendant has made unsupported assertions that Plaintiff was a member of the Union during the relevant time period, Plaintiff is faced with the quandary of possibly needing to pursue this matter in arbitration in a timely fashion.  Although Plaintiff denies and disputes that he is a member of the Union and although Plaintiff believes this Court is the appropriate forum to pursue this matter, solely to preserve his right to pursue his claims, he is forced, due to the corporate Defendant's unsupported allegations to request the Union to take timely actions to grieve his matter and pursue the matter in arbitration.  Plaintiff's counsel has sent correspondence to the Union pertaining to this issue.

Plaintiff anticipates, due to counsel for Defendants' allegations, that Defendants will file a motion to dismiss this matter.  In all likelihood, it may take time for the Court to decide that motion, to the extent Defendants file same.  If the Court denies the motion, then Plaintiff will advise the Union to take no further action with regard to grieving or arbitrating the matter.  If the Court grants the motion, then Plaintiff will request that the Union take action to grieve or arbitrate the matter. Plaintiff notes that he has no authority to grieve or arbitrate the matter or to compel the Union to grieve or arbitrate the matter.  However, solely due to counsel for Defendants' allegations, and because Plaintiff does not want to be left without a forum to pursue his claims, he has sent a letter to the Union, with the reservation that Plaintiff believes Federal Court is the appropriate jurisdiction to litigate his causes of action.

DATED:        August 24, 2020

**HYDERALLY & ASSOCIATES, P.C.**
*Attorneys for Plaintiff*

By:        */s/ Ty Hyderally*
**TY HYDERALLY, Esq.**
**For the Firm**

**Edward F. Westfield, P.C.**
*Attorneys for Plaintiff*

By:        */s/ Edward F. Westfield*
**EDWARD F. WESTFIELD, Esq.**
**For the Firm**

T:\Toribio Edwin\Pleadings\081320.COM.docx

# EXHIBIT "1"



**U.S. Equal Employment Opportunity Commission**
**New York District Office**

33 Whitehall Street
5th Floor
New York, NY 10004
(929) 506-5270
TDD: 1-800-669-6820
Fax: (212) 336-3625
1-800-669-4000

Respondent: 1100 PARK AVENUE COOP
EEOC Charge No.: 520-2019-03554
FEPA Charge No.:

October 30, 2019

Edwin Toribio
3034 81st Street, Apt. #3
East Elmhurst, NY 11370

Dear Mr. Toribio:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

| | |
|---|---|
| [X] | Title VII of the Civil Rights Act of 1964 (Title VII) |
| [X] | The Age Discrimination in Employment Act (ADEA) |
| [X] | The Americans with Disabilities Act (ADA) |
| [ ] | The Equal Pay Act (EPA) |
| [ ] | The Genetic Information Nondiscrimination Act (GINA) |

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

Please be aware that we will send a copy of the charge to New York State Division Of Human Rights Federal Contract Unit One Fordham Plaza, 4 Fl. Bronx, NY 10458 as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

The quickest and most convenient way to obtain the contact information and the status of your charge is to use EEOC's Online Charge Status System, which is available 24/7. You can access the system via this link (https://publicportal.eeoc.gov/portal) or by selecting the "My Charge Status" button on EEOC's Homepage (www.eeoc.gov). To sign in, enter your EEOC charge number, your zip code and the security response. An informational brochure is enclosed that provides more information about this system and its features.

While your charge is pending, please notify us of any change in your address, or where you can be reached if you have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

David L. Reinman
ADR Coordinator
(929) 506-5306

Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
www.eeoc.gov

Enclosure(s):        cc:

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION |  | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. |  | ☐ FEPA ☒ EEOC | 520-2019-03554 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Mr. Edwin Toribio | (347) 461-1055 | 1977 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3034 81St. Street, Apt. #3, EAST ELMHURST, NY 11370 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| 1100 PARK AVENUE COOP |  | (212) 722-7462 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1100 Park Avenue, New York, NY 10128 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
|  |  |  |

| Street Address | City, State and ZIP Code |
|---|---|
|  | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN
☒ RETALIATION   ☒ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 10-31-2017   Latest: 04-16-2019

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I, Edwin Toribio, am a 42 year old Hispanic (Dominican) male with a qualifying disability under the Americans with Disabilities Act of 1990, as amended (ADA). I was employed by the above named entity (Respondent) from October 31, 2016 until my wrongful discharge on April 16, 2019. I started as a Night Doorman, worked temporarily as a Service Elevator Operator from January 2017 until August 2017, and returned to my position as a Night Doorman. I continued working as a Night Doorman sometimes sitting in as a night Concierge, as needed. My work performance was always satisfactory or better and I never had any complaints.

During my employment, my immediate supervisor, William Mooney (Irish), Building Manager, and other non-Hispanic workers made comments about my ethnicity, age, and disability that were offensive. These comments included lazy Puerto Rican dumb in a can for Dominican wetbackbroke old manold jarhead (because of my U.S. Marine service)dont shoot up the place like you veterans do (due to my military service related disability), etc.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Digitally signed by Edwin Toribio on 10-16-2019 03:00 PM EDT | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 520-2019-03554 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

On January 5, 2018 I was injured at work after Mr. Mooney insisted I shovel snow which was outside of my work duties. I was able to return to work by March 2018 and the doctor had indicated I could do so with restrictions on lifting and sitting or standing for too long. I requested the accommodation form Mr. Mooney, but for the next year he repeatedly denied the accommodation with engaging in the interactive process or suggesting that I could work as a concierge since I had experience doing so. I am aware that he allowed another employee, Richie (Irish), Handyman to return to work with restrictions. I believe he denied me the same opportunity because I am Hispanic. For over 1 year until April 2019 I communicated with Mr. Mooney at least monthly and repeatedly requested I be allowed to return to work. However, he insisted I could only return if I was 100% or able to return without restrictions.

I believed that by communicating with Mr. Mooney, I was following proper protocol and failed to file a formal internal discrimination complaint.

On April 16, 2019, I was terminated supposedly for failing to return to work. I was replaced by a younger, Irish male.

Based on the above, I believe I was discriminated based on my national origin, age and disability and in retaliation for requesting a reasonable accommodation, in violation of Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, as amended and the ADA.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Edwin Toribio on 10-16-2019 03:00 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 520-2019-03554 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| Mr. Edwin Toribio | (347) 461-1055 | 1977 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3034 81St. Street, Apt. #3,  EAST ELMHURST, NY 11370 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| 1100 PARK AVENUE COOPERATIVE CORPORATION | | (212) 722-7462 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1100 Park Avenue, New York, NY 10128  ~~agent~~ C/o Wallack Management, 441 Lexington Ave, NY, NY 10017 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| WALLACK MANAGEMENT COMPANY, INC | | (212) 753-3381 |

| Street Address | City, State and ZIP Code |
|---|---|
| 441 Lexington Ave., 4th Floor, NY, NY 10017 | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

Earliest **10-31-2017**   Latest **04-16-2019**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I, Edwin Toribio, am a 42 year old Hispanic (Dominican) male with a qualifying disability under the Americans with Disabilities Act of 1990, as amended (ADA). I was employed by the above named entity (Respondent) from October 31, 2015 until my wrongful discharge on April 16, 2019. I started as a Night Doorman, worked temporarily as a Service Elevator Operator from January 2017 until August 2017, and returned to my position as a Night Doorman. I continued working as a Night Doorman sometimes sitting in as a night Concierge, as needed. My work performance was always satisfactory or better and I never had any complaints.

During my employment, my immediate supervisor, William Mooney (Irish), Building Manager, and other non-Hispanic workers made comments about my ethnicity, age, and disability that were offensive. These comments included lazy Puerto Rican dumb in a can for Dominican wetbackbroke old manold jarhead (because of my U.S. Marine service)dont shoot up the place like you veterans do (due to my military service related disability), etc.

*race

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Digitally signed by Edwin Toribio on 10-16-2019 03:00 PM EDT | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 520-2019-03554 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

On January 5, 2018 I was injured at work after Mr. Mooney insisted I shovel snow which was outside of my work duties. I was able to return to work by March 2018 and the doctor had indicated I could do so with restrictions on lifting and sitting or standing for too long. I requested reasonable accommodation and the accommodation form from Mr. Mooney, but for the next year he repeatedly denied the accommodation without engaging in the interactive process or suggesting that I could work as a concierge since I had experience doing so for the company. I am aware that he allowed another employee, Richie (Irish non-Hispanic), Handyman to return to work with restrictions. I believe he denied me the same opportunity because I am Hispanic and Dominican. For over 1 year until April 2019 I communicated with Mr. Mooney at least monthly and repeatedly requested I be allowed to return to work. However, he insisted I could only return if I was 100% or able to return without restrictions. On April 16, 2019, I was terminated supposedly for failing to return to work. I was replaced by a younger, Irish male, who was not Hispanic and who was not suffering from a disability.

Based on the above, I believe I was discriminated against based upon my race, national origin, age and disability and in retaliation for requesting a reasonable accommodation, in violation of Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, as amended and the ADA.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| D | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

# EXHIBIT "2"

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Edwin Toribio**<br>**3034 81st Street, Apt. #3**<br>**East Elmhurst, NY 11370** | From:  **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

☐   *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2019-03554** | **Maritza Rondon-Velazquez,**<br>**Investigator** | **(929) 506-5332** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

☒   More than 180 days have passed since the filing of this charge.

☐   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☒   The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*(signature)*                                                                        **6/5/2020**

MRV
_____
**Judy A. Keenan,**
**Deputy Director**                                                              *(Date Mailed)*

Enclosures(s)

cc:  **1100 PARK AVENUE COOP**
     **1100 Park Avenue**
     **New York, NY 10128**

     **Bradley J. Bartolomeo**
     **Lewis Brisbois Bisgaard & Smith LLP**
     **77 Water Street, Suite 2100**
     **New York, NY 10005**

     **Ty Haderally, Esq.**
     **Hyderally & Associates, P.C.**
     **33 Plymouth Street, Suite 202**
     **Montclair, NJ 07042**

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability.  *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),  **"major life activities"  now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EXHIBIT "3"

 T-Mobile 📶          1:46 PM          ⏰ 26% 🔋

‹ ❸



Bill Mooney ›

Jan 5, 2018, 7:14 AM

Mr Mooney, I apologize for not staying for Costel but I hurt my back and need to rest to make sure I can make it tonight. Again I'm sorry I know I volunteered to stay but really indisposed with this pain.

Jan 5, 2018, 5:03 PM

Mr Mooney, just waking up and I am not feeling any better. Can I try a switch with somebody for tonight?

U already have a swap on Sunday. To early in year, u will have to use a sick day.
U coming in or what ?

Hello

If your not coming in I need to know

Jan 5, 2018, 8:25 PM

Sorry just woke up. Ok I understand. I will let the guys know that I'll not

  iMessage 

       



**1:46 PM**

.ull T-Mobile 🛜

🔋 26% ⚡

‹ 3



**Bill Mooney ›**

Jan 5, 2018, 8:25 PM

Sorry just woke up. Ok I understand I will let the guys know that I'll not be coming in tonight. Thanks.

K

# EXHIBIT "4"

.ıll T-Mobile 🛜                1:46 PM                ⏰ 26% 🔋

Bill Mooney ›

Jan 8, 2018, 1:06 PM

U coming in today ?
Or you remaining on The
Malingering list 😂

Hello

Sorry just getting up. I don't feel any better. I will keep stretching out during the day and keep taking my muscle relaxers but can't guarantee anything yet. Will let you know early if I feel capable or not.

O K
What's the issue ?

My lower back is killing me.

All those years of Humping with to

iMessage

   

       

 T-Mobile

1:46 PM

26%



Bill Mooney ›

All those years of Humping with to much weight, comes back to haunt you my friend.
Back and knees, but thank your lucky stars that u we're just a Leg.
Us death from above merchants had to Jump AND Hump.
But we're made of steel 😂

😂 😂 😂

Looking it from that perspective you're right, thank God!

Jan 9, 2018, 3:39 PM

Mr Mooney, good afternoon. Wagner just told me that I need a doctors note since I took these days off. Is that true?

Yes
Are u in tonight ?



  iMessage 

       

# EXHIBIT "5"



Tuesday, January 9, 2018

Ok. No sir, I am off tonight. Go back on Thursday. I'll go to the doctor and bring you one on Thursday.

O K
How was your vacation 😂

No vacation boss I promise you that. Literally been in and out of bed the whole time. Doing stretches and exercises to loosen my back and drinking muscle relaxers to no avail. Never went to a doctor because I've dealt with this before and since I know what to do to stretch out and have a supply of medication I didn't need to but since I now know that I have to bring you a note I will make an appointment for tomorrow or Thursday the latest.

K

U know that was a joke

I know but I also know the gossip



EXHIBIT "6"


## AdvantageCare
PHYSICIANS

ASTORIA MEDICAL OFFICE
ASTORIA INTERNAL MEDICINE
31-75 23rd Street
Astoria NY 11106-3607
718-956-2200

January 11, 2018

Edwin Toribio
3034 81 St Street 3rd Floor
East Elmhurst NY 11370

Patient:      **Edwin Toribio**
Date of Birth: **8/16/1977**
Date of Visit: **1/11/2018**

To Whom it May Concern:

Edwin Toribio was seen in my clinic on 1/11/2018 due to sciatica. He can return to work on 01/15/18. Any question, please call the office.

Sincerely,

Petronela Antohi, MD

AdvantageCare Physicians
Astoria Medical Office
31-75 23rd Street
Astoria, NY 11106

RE: Toribio, Edwin -- MR#: 6238649                                    Page 1

EXHIBIT "7"

 AdvantageCare
PHYSICIANS

ASTORIA MEDICAL OFFICE
ASTORIA INTERNAL MEDICINE
31-75 23rd Street
Astoria NY 11106-3607
718-956-2200

January 22, 2018

Edwin Toribio
3034 81 St Street 3rd Floor
East Elmhurst NY 11370

Patient:      **Edwin Toribio**
Date of Birth: **8/16/1977**
Date of Visit: **1/22/2018**

To Whom it May Concern:

Edwin Toribio was seen in my clinic on 1/22/2018.

Sincerely,

Petronela Antohi, MD

AdvantageCare Physicians
Astoria Medical Office
31-75 23rd Street
Astoria, NY 11106

RE: Toribio, Edwin -- MR#: 6238649                                           Page 1

EXHIBIT "8"



ll T-Mobile 📶  2:00 PM  ⏰ 94% 🔋

**Bill Mooney** ›

King is out for at least a month from today, my guess would be more. Your out about 3 months now, at this point we need u back or we will have to move on.

Is this an ultimatum?  Let me know and I'll know what to do. Thanks.

No it's not but we need u back.
If your not coming back let me know ASAP.
I just told u King is out as of today for 30 days, that could turn into more.

Mar 20, 2018, 6:55 PM

I phoned u 3 times today !!!
Are u away ?

Mar 22, 2018, 11:33 AM

Again I need to talk to u, phone me at the building.

Mar 26, 2018, 7:27 AM



EXHIBIT "9"



**Mar 26, 2018,** 7:27 AM

Just hear your messages. What's going on?

Are u kidding me, what is wrong with your phone, u don't tests ?

Texts

I was phone less due to not paying my bill. I'm getting $150/ week!! That's insane!

I have an envelope for u from Mr Gross from Christmas.
Are u back on the 10th ?

Wow. Thank you. That would be amazing right now!  I'll swing by this afternoon thank you. Yes I should be. The doctor has test results from emd test I took last week and will be talking with me about it this Thursday. Will keep you posted but I will see you later today. Thank you again!

iMessage

# EXHIBIT "10"



**Apr 4, 2018**, 4:02 PM

Waiting on your return, come April 10th, you will be out from Work for 3 months & 10 days. If you are coming back u will need a letter saying u are 100% fit to work. What's it looking like ?

Hello

**Apr 5, 2018**, 4:18 PM

Hi Ed, when are you coming for the Gross envelope?

Don't think so. Am babysitting right now because the wife had an appointment. Tomorrow I'll be there.

I'm off work tomorrow, touch base with me Monday.

Oh nice. Enjoy will do.

K

EXHIBIT "11"



Feb 13, 2019, 1:15 PM

Edwin,
As your situation has gone on and on for quite some time now, over a year, Management would like you to get a letter from your Doctor, explaining where you are now and what time frame they expect you to return to work.
From what I know for you to return to work, you will have to get a letter from your Doctor to say you can lift at least 50Lbs.
Let me know when you expect to have the letter they are requesting.
Bill

Feb 13, 2019, 3:02 PM

Ok. Will talk to him tomorrow to have that for me and as soon as he does I'll send it to you.

Thank you.

Feb 20, 2019, 2:40 PM



# EXHIBIT "12"



Bill Mooney >

Mar 21, 2019, 12:19 PM

Good afternoon Mr Mooney. After reviewing the paperwork from the insurance doctor, it says that I can return to work with restrictions and that I will be back to 100 percent a year after surgery. Does that mean that I can return to work now on limited duty and then have surgery be out for 3 to 6 months on rehab and then go back to work on limited duty for a year?  Please let me know so that I can plan things out. I hope so because this looks like a really long process and I can't be on Wc for another year and a half or more by the looks of this prognosis. Thank you and Have a great day!

No way can you come back to work with restrictions.
You have to have a letter saying you are 100 per cent fit to do your job as normal.



907-109249-

**Examinee Name:**    Edwin Toribio
**Examination Date:**    March 5, 2019

1. Lumbar spine sprain.

### DISCUSSION:

Maximum medical improvement has not been obtained.  It is anticipated to be obtained in one year post surgery if performed.

### DISABILITY/ABILITY TO WORK:

Based on the examination at this time, there is evidence of a moderate (50%) causally related disability.  This is also based upon the available medical documentation, which was reviewed. This individual is capable of performing activities of daily living and returning to work with the following restrictions:  No lifting greater than 20 pounds; no prolonged walking, standing or stair climbing; no vertical ladders; no squatting or repetitive bending.

### PERMANENCY:

Maximum medical improvement has not been reached; therefore, comment on permanency is premature at this time.

My assessment is in accordance with the New York State Workers' Compensation Board Guidelines effective 12/15/14 Treatment Guidelines, as well as the New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity, January 2012.

This report is a full and truthful representation of my professional opinion with respect to the claimant's condition in accordance with Workers' Compensation Law Sections 13-a (4)(e)(i), 13-k (3)(e)(i),13-l (3)(e)(i) or 13-m (4)(e)(i), as appropriate. No person or entity has caused, directed or encouraged me to submit a report that differs substantially from my professional opinion. I have reviewed the report and attest to its accuracy.

I, Richard Levitt, being a Diplomate of the American Board of Orthopaedic Surgery, am duly licensed to practice medicine in the State of New York.  I affirm, under the penalties of perjury, that the information contained within this document was prepared and is the work product of the undersigned, and is true to the best of my knowledge and information.

If any additional information is made available for my review, I will be happy to re-evaluate my position at that time.

I am typically available to testify with advanced notice.

Sincerely,

4 | P a g e

PQR

EXHIBIT "13"

# Carl Nicoleau M.D.
**Phone:** 718-565-6880
**Fax:** 877-796-4457
86-10 Roosevelt Ave, 2A
Jackson Heights, NY 11372

## LETTER OF DISABILITY

Patient's Name: _Edwin Toribio_          Date: _4/5/19_

To Whom It May Concern:

The above named individual is currently a patient under my care and is undergoing treatment and evaluation for the following:

**Diagnosis:** _Chronic LBP     Lumbar Radiculopathy_

At the present time, the **level of impairment** is as follows**:**

[] Totally disabled, unable to work at this time or unable to perform duties and activities required

[✓] Partially disabled, but able to perform duties full time

[] Partially disabled, able to work on a part-time or light-duty basis

[] Not disabled, capable of working full-time and performing duties and activities required

**Period of Disability:** _____

**Restrictions are as follows:**
[] None
[] Patient may work on a part-time basis, _____ hours/ day, _____ days/ week
[✓] No heavy or repetitive lifting (more than _20_ lbs occasionally and _20_ lbs frequently)
[✓] No prolonged sitting (more than _2-3_ hours continuously and _5_ hours /day)
[✓] No prolonged standing (more than _1_ hours continuously and _3_ hours /day)
[✓] No repetitive or sustained bending, kneeling, squatting, or crawling.
[] No participation in physical education (gym class) or unsupervised exercise at a gymnasium.
[] Other _____
_____
_____

**Prognosis** is as follows:
[] Guarded
[✓] Good
[] Fair
[] Poor

The patient will be **re-evaluated** in _4_ weeks and at that time the level of disability will be re-evaluated. If I can be of any assistance, please do not hesitate to contact me.

Yours in Health,

Carl Nicoleau M.D. Ph.D.
86-10 Roosevelt Ave, 2B
Jackson Heights, NY, 11372

Carl Nicoleau, MD

EXHIBIT "14"



# WALLACK MANAGEMENT COMPANY, INC.

441 Lexington Ave. 4ᵗʰ FL. New York, NY 10017 • (212) 753-3381 • Fax (212) 755-3942

REAL ESTATE MANAGEMENT
TOWNHOUSE DIVISION
SALES
INSURANCE
DEVELOPMENT
FINANCING

April 16, 2019

Edwin Toribio
3034 81ˢᵗ Street, #3
East Elmhurst, NY 11370

Dear Mr. Toribio:

You have been on leave since January 16, 2018 and have exceeded all forms of leave to which you are entitled.  You recently advised that you will be unable to return to work for at least 12 to 16 months from now.  Your continued absence constitutes an undue hardship on the operation of 1100 Park Avenue Cooperative Corporation and we can no longer continue to hold your position open.  Your employment is hereby terminated.

Please contact Local 32BJ, SEIU for information concerning any benefits to which you may be entitled.

Sincerely,

Burton Wallack

BW/lg
cc *(via email)*:  Harry Weinberg, Esq., RAB
                  Donovan Cole, Local 32BJ, SEIU
                  William Mooney